RECEIVED

JUN 2 1 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| Easton Francisco | Civil Action No. 05-1850 |
| versus | Judge Tucker L. Melançon |
| Sid Hebert, Individually and in his Capacity as Sheriff and Ex-Officio The Parish of Iberia and Iberia Parish Sheriff's Department | Magistrate Judge Methvin |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by defendant Sidney

J. Hebert ("Sheriff Hebert") individually and in his capacity as Sheriff of Iberia

Parish, [Rec. Doc. 39], seeking to dismiss plaintiff's civil rights claims, as well as any

and all state law or tort claims, alleged against him; plaintiff Easton Francisco's

("Francisco") Memorandum in Opposition thereto [Rec. Doc. 41]; and defendant's

Reply Memorandum. [Rec. Doc. 42]. For the reasons set out hereinafter, defendant's

Motion [Rec. Doc. 39] will be GRANTED.

### I. Factual and Procedural Background

Plaintiff's claims arise out of an incident in which he was allegedly beaten with

a padlock by another inmate, Curtis Ceaser ("Ceaser") while he was in custody at the

Iberia Parish Jail. On October 24, 2005, Francisco filed his Complaint against

Sheriff Hebert and the Iberia Parish Sheriff Department.  On August 1, 2006, the

Court granted defendant Iberia Parish Sheriff's Office's Motion, dismissing plaintiff's

claims against it.  [Rec. Doc. 10].  Plaintiff claims that Sheriff Hebert is legally

responsible for his injuries based on a theory of *respondeat superior*, alleging that

Sheriff Hebert acted in a manner that was deliberately indifferent to the threats posed

to his safety in violation of the Eighth Amendment.  Plaintiff alleges that Sheriff

Hebert's negligence, allowance of the sale and possession of a dangerous item, and

other "actions and inactions to be proven at the trial" caused various injuries to him.[1]

Plaintiff brings his federal claims under 42 U.S.C. §§1983, 1988 and his state claims

under LA. CIV. CODE ANN. art. 2315, *et seq.*, as well as any other laws that might be

applicable.

From the evidence of record, taken in a light most favorable to plaintiff, the

pertinent facts are as follows.  On October 23, 2004, while incarcerated in the

Iberia Parish Jail in New Iberia, Louisiana, plaintiff and his friend and fellow

inmate, Brandon Spencer ("Spencer"), were approached by another inmate,

Kenneth Dugas ("Dugas"), while they were sitting on their bunk bed in the cell

---

[1]Francisco asserts that Sheriff Hebert is legally responsible to him for both "actions or inactions, including but not limited to: (1) negligent supervision; (2) negligent sale of dangerous weapons or other items which could inflict serious bodily injury; (3) maintenance and allowance of the sale and possession of dangerous items and/or weapons; (4) violation of the plaintiff's civil rights and liberties; and (5) other acts of negligence and actions and inactions to be proven at the trial of this matter." [Rec. Doc. 1; Complaint at VI].

area, which is subject to camera surveillance. [Francisco Depo. 1 at 19-22, 25].

Dugas communicated to them that his friend Clint Johnson ("Johnson") wanted to

fight Francisco when the lights went out. [*Id.* at 21]. Francisco described Dugas'

communication with him and his fight with Johnson as follows:

> . . . All along, when the lights would have went out, they all was
> going to jump on me and my friend Brandon. So me and my friend
> Brandon was sitting down on the bunk, and Clint friend walk up to us
> saying that Clint want to fight me, like that, when the lights go off or
> whatever. And I was like, no, I don't want to fight or whatever.
> That's what I was telling him, like, but he kept coming back or
> whatever saying the same thing or whatever. That's when I gave in
> and we start fighting or whatever because if I would have hold out
> until the lights go out, they'd try to jump us. They had a few of them
> in the crowd with them, like, and it was just me and my friend. So we
> end up fighting . . .

*Id.* at 20.    Johnson and Francisco fought for several minutes without intervention

by prison guards, and despite attempts to separate the two by fellow inmates, they

continued to fight. [*Id.* at 26-27]. Eventually, Johnson and Francisco separated,

terminating the fight. [*Id.*].

Shortly after the fight ended between Francisco and Johnson, Spencer and

Ceaser, one of Johnson's friends, began fighting. [*Id.* at 28]. Francisco's

deposition testimony was that Spencer told him Ceaser had a lock the whole time

he (Spencer) and Ceaser were fighting. [*Id.* at 31]. Spencer emerged with a

swollen mark on his face, but with no bleeding. [*Id.* at 31]. Ceaser then

approached Francisco from behind on the side of his bunk and attacked him. [*Id.* at 35]. Ceaser proceeded to "stomp on " Francisco after having knocked him to the ground, at which time Francisco states that Ceaser hit him in the eye with the padlock enclosed in his fist, "[tearing] open [his] eye when he hit [him] . . . [and] started stomping on [him]." [*Id.* at 36]. However, there is no evidence in the record, other than the contention by Spencer, that Ceaser was in possession of a padlock and used it to attack Francisco. More specifically, Francisco conceded that he, personally, never saw the padlock, no other inmates stated that Ceaser hit Francisco with a padlock, nor did the guards attest to finding a padlock in the area following the encounter. [*Id.* at 21, 35-36]. The "padlock" referred to is an item available for purchase at the jail commissary. The sale and use of locks in the jail are restricted in accordance with the Prison Handbook as follows:

> A locker is provided for each inmate. All personal items and issued property must to [sic] be stored in an inmate's assigned locker. Only locks sold in the commissary are allowed. All other locks will be considered contraband and removed. Any lock found with the keyhole jammed will be cut off and not replaced . . .

[plaintiff's Memorandum in Opposition, Rec. Doc. 41, Iberia Parish Jail Inmate Handbook at 14]. It is uncontested that prior to this incident, Francisco and Ceaser had never before engaged in a fight or argument. [Rec. Doc. 39; Francisco Depo. 2 at 27]. Francisco surmised that Johnson's friend Ceaser was "mad

4

because my friend beat him up, so he took it out on me, I guess." [Francisco Depo 1 at 21].

In his Voluntary Statement, Deputy Glenn Comeaux ("Dep. Comeaux") relates that, as he opened the door to "K-8" he heard banging at the end of the cell, went "around to K-4 and asked them what was the deal. Inmate Curtis Ceasar said, 'you want some more.'" [Comeaux Statement, plaintiff's Exhibit 4]. Dep. Comeaux's statement then indicates he "knew they were fighting." [*Id.*]. Realizing that there was a fight in progress, Dep. Comeaux pulled Spencer and Francisco from "K-4," and called for back-up. [*Id.*]. Deputies Migues and Crassland escorted Francisco and Spencer to the chapel. [*Id.*]. Dep. Comeaux escorted Ceaser to the visiting cell. [*Id.*].

As to the exact time of the fight, Dep. Comeaux's Statement notes a start time of 23:38, or 11:38 p.m., when he first noticed inmates around the windows in the area and became alerted to the fight [Comeaux Statement, Rec. Doc. 41, Exh. 4]. Francisco, however, appears to dispute the time of the fight. When questioned, Francisco, responded, "I know it was after breakfast, so it was in the evening, probably like after lunch or right before lunch. I don't remember. It was awhile back . . . It was daytime" [Francisco Depo. 1, p. 22].

Immediately following the incident, Francisco was transported to Our Lady

of Lourdes Regional Medical Center and received treatment for the injury to his left eye.  Upon discharge, Francisco was taken to a number of eye doctors, including Dr. Culatta, who later performed surgery on his eye. [Francisco Depo. 2 at 11-17].  However, Francisco asserts that the surgery has yielded no positive results and as such, has since refused to undergo further corrective surgeries and/or treatment, and additionally, has refused to wear the eye patch that was prescribed by his doctor to aid in rehabilitation. *[Id.]* Francisco stated that he had chosen not to employ the use of the prescribed patch because he, "[d]idn't want people exactly to know that he was blind." *[Id.* at 14-17].

Sheriff Hebert moves for summary judgment, seeking dismissal of plaintiff's claims against him.

## *II. Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which

would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H.*

---

[2]

Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

*Kress & Co.,* 398 U.S. 144. 159 (1970); *Little,* 37 F.3d at 1075. There must be

sufficient evidence favoring the non-moving party to support a verdict for that

party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d

95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the

evidence in the light most favorable to the non-moving party, no reasonable trier

of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool*

*Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a

matter of law, the court is required to render the judgment prayed for. Fed. R. Civ.

P. 56(c); *Celotex Corp.,* 477 U.S. at 322. Before it can find that there are no

genuine issues of material fact, however, the court must be satisfied that no

reasonable trier of fact could have found for the non-moving party. *Id*

### III. Analysis

Defendant denies plaintiff's allegations and seeks dismissal of all claims,

state and federal, asserted against him. Specifically, defendant moves for

summary judgment on plaintiff's federal claims arguing that plaintiff cannot prove

deliberate indifference to any threat to his safety, and therefore cannot meet his

burden under Section 1983 of proving the defendant violated his constitutional

rights. Alternatively, defendant maintains that dismissal is proper on grounds of

8

qualified immunity.[3]  Defendant additionally requests that this Court, upon

dismissal of plaintiff's federal claims, retain jurisdiction and dismiss plaintiff's

state law claims with prejudice as they are "weak and very easy to decide"

[Defendant's Reply, Rec. Doc. 42 at p. 7].  Specifically, defendant argues that the

evidence submitted by plaintiff fails to show that he was negligent and that

plaintiff failed to exhaust his administrative remedies as required by the

Correction Administrative Procedure set forth in the Administrative Remedy

Policy ("CARP") in force at the Iberia Parish Jail.

*A. Law*

     The Civil Rights Act of 1871, 42 U.S.C. § 1983 provides that "[e]very

person who, under color of any statute, ordinance, regulation, custom, or usage, of

any State ... subjects, or causes to be subjected, any ... person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured."  42

U.S.C. § 1983.  There are three elements to establish liability through a Section

1983 action.  *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir.1986).  There must be

---

[3]Defendant cites an Eighth Circuit case, *Tucker v. Evans*, in support of his contention that
he is entitled to Qualified Immunity as such is appropriate "... [W]hen an Eighth Amendment
failure-to-protect claim arises from a surprise attack by another inmate." 276 F. 3d 999, 1001 (8th
Cir. 2002). [Rec. Doc.42; Memo in Reply at 6].  Francisco, himself, states in the record that the
incident was a surprise attack. [Rec. Doc. 41; Francisco Depo. 1 at 3].

(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor. *Id.* "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146, (1979); *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir.1994) (en banc).

Francisco faults defendant for failing to protect him from the attack that occurred on October 23, 2004, in which he sustained trauma to his left eye. The law in this area is well settled. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) (citing *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir.2002) (citing Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994))). Jail "officials have a [constitutional] duty ... to protect inmates from violence at the hands of other prisoners." *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir.1995); *see also Johnston v. Lucas*, 786 F.2d 1254, 1258 (5th Cir.1986). "Prison officials are not, however, expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir.2003). Prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. *Adames*, 331 F.3d at 512 (citation omitted).

10

To establish a §1983 failure to protect claim plaintiff must show that he was detained or incarcerated ". . . under conditions posing a substantial risk of serious harm and that prison officials were *deliberately indifferent* to his need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir.1995) (emphasis added). This is a subjective standard. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847, 114 S.Ct. 1970. In other words, the prison official must have a sufficiently culpable state of mind, which, in prison-conditions cases, is one of "deliberate indifference" to inmate health or safety. Id. at 834, 114 S.Ct. 1970. "To find that an official is deliberately indifferent, it must be proven that 'the official knows of and disregards an *excessive risk* to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a *substantial risk* of serious harm exists, and he must also draw the inference'. " *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002), *citing Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (emphasis added).[4] "Deliberate indifference encompasses

---

[4]Officials may be found liable in their individual capacities for denying humane conditions of confinement to the inmates in their charge, but only if it is shown that (1) the official was aware of facts from which an inference of substantial risk of serious harm could be

only unnecessary and wanton infliction of pain repugnant to the conscience of

mankind." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) *citing Estelle v.*

*Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed.2d 251 (1976).

"Subjective recklessness," as used in the criminal law, is the appropriate test for

deliberate indifference.  *Norton,* 122 F.3d at 291, *citing Farmer v. Brennan*, 511at

838-40.

Officials are not subject to liability under §1983 for acts or omissions of

their subordinates on the basis of *respondeat superior. Mouille v. City of Live*

*Oak*, 977 F .2d 924, 929 (5th Cir.1992).  "A sheriff not personally involved in the

acts that deprived the plaintiff of his constitutional rights is liable under section

1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a

causal connection between the alleged failure to supervise or train and the alleged

violation of the plaintiff's rights; and 3) the failure to train or supervise constituted

deliberate indifference to the plaintiff's constitutional rights." *Thompson v.*

*Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001).  More specifically,

Francisco must show that he was incarcerated under conditions posing a

---

drawn; (2) the official actually drew that inference; and (3) the official's response indicates the
official subjectively intended that harm to occur." *Thompson v. Upshur County, Tex.*, 245 F.3d
447, 458-59 (5th Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 838-40, 114 S.Ct. 1970,
128 L. Ed 811 (1994)); *See also Downey v. Denton County*, 119 F.3d 381, 385 (5th Cir.1997).

"substantial risk of serious harm" and the defendants acted with deliberate

indifference to that danger. *Farmer,* 511 U.S. 825 at 834.

    *B. Application of the Eighth Amendment's Prohibition of Cruel and Unusual Punishment*

      Plaintiff directs the Court to his allegations that defendant is liable to him

under 42 U.S.C. §1983 for, among other things, the "maintenance and allowance

of the sale and possession of dangerous items and/or weapons," which in this case

is a padlock that he alleges was "maintained, sold, provided and/or otherwise

supplied" to his fellow inmate at the Iberia Parish Jail. [plaintiff's Memorandum in

Opposition, Rec. Doc. 41 at 3-4]. Plaintiff submits the Complaint filed in this

Court by Jared Matthew Sanchez ("Sanchez"), Civil Action 05-1393, in which

Sanchez alleges that he was injured by a fellow inmate with a padlock,[5] as

evidence of more than one attack with a padlock, arguing that questions of fact

exist as to the knowledge of defendant of the risk to inmates from assaults with

weapons, i.e. padlocks, sold at the jail commissary, and whether the jail officials'

response was inadequate, evidencing deliberate indifference. [plaintiff's

Memorandum in Opposition, Rec. Doc. 41, pp. 6-8]. Plaintiff argues that the

Sanchez Complaint was sufficient to put Sheriff Hebert "on notice" that such

---

    [5]This Complaint was dismissed on January 30, 2006 for failure to prosecute. [Civil Action No. 05-1393, Rec. Doc. 9].

13

padlocks were being utilized as weapons and thus posed a "substantial risk of serious harm," to which he responded with "deliberate indifference." *Farmer,* 511 U.S. 825 at 834. Thus, rather than arguing that he was subject to a particular threat of harm from a specific inmate, plaintiff argues that he was subject to a generalized threat of harm from the use of a padlock as a weapon. *See Farmer v. Brennan,* 511 U.S. 825, 843, 114 S.Ct. 1970, 1982 (1994) (indicating "[t]he question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prison to a sufficiently substantial 'risk of serious damage to his future health,'. . . and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."). Plaintiff directs the Court to the rule of law adopted by the Supreme Court in *Farmer*:

> Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. Cf. 1 C. Torcia, Wharton's Criminal Law § 27, p. 141 (14th ed. 1978); Hall 115. We doubt that a subjective approach will present prison officials with any serious motivation "to take refuge in the zone between 'ignorance of obvious risks' and 'actual knowledge of risks.' " Brief for Petitioner 27. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from

14

circumstantial evidence, cf. Hall 118 (cautioning against "confusing a
mental state with the proof of its existence"), and a factfinder may
conclude that a prison official knew of a substantial risk from the very
fact that the risk was obvious. Cf. LaFave & Scott § 3.7, p. 335 ("[I]f
the risk is obvious, so that a reasonable man would realize it, we
might well infer that [the defendant] did in fact realize it; but the
inference cannot be conclusive, for we know that people are not
always conscious of what reasonable people would be conscious of").
For example, if an Eighth Amendment plaintiff presents evidence
showing that a substantial risk of inmate attacks was "longstanding,
pervasive, well-documented, or expressly noted by prison officials in
the past, and the circumstances suggest that the defendant-official
being sued had been exposed to information concerning the risk and
thus 'must have known' about it, then such evidence could be
sufficient to permit a trier of fact to find that the defendant-official
had actual knowledge of the risk."

*Farmer v. Brennan*, 511 U.S. 825, 842-843, 114 S. Ct. 1970, 1981 - 1982 (1994).

Plaintiff further relies on *Shrader v. White*, 761 F.2d 975, 981 (4th Cir.

1985) in which the United States Court of Appeals for the Fourth Circuit

addressed an appeal by inmates whose complaint challenging the conditions of

confinement at the Virginia State Penitentiary had been dismissed by a

magistrate.[6]  The Fourth Circuit was concerned with the presence of weapons in

the institution, particularly in view of the magistrate judge's findings. *Id.* at 982.

In reviewing the magistrate judge's findings, the Fourth Circuit was unable to

determine from the "magistrate's findings whether the manufacture of weapons

---

[6]In *Shrader* the parties consented to trial before a United States magistrate. *Shrader*, 761
F.2d at 977.

from scrap metal [was] being conducted on such a scale as to represent a pervasive

risk of harm or what the official response [had] been." *Id.* at 982-83.  In that case,

the magistrate judge recognized:

> Plaintiffs have stressed the prevalence of weapons in the Virginia
> State Penitentiary by claiming that the state has failed to protect them
> from a pervasive risk of harm, relying on the language of Withers,
> 615 F.2d 158. At first glance, the argument is attractive, for weapons
> do exist. There is evidence that the material from which they were
> made, i.e., scrap metal, was not sufficiently safeguarded and there is
> evidence that the method employed to restrict the making and
> conveyance of such weapons was inadequate. The facts may well
> establish that a danger exists which is specific (the weapons), obvious
> (from the number of stabbings and shakedown reports), and
> "unnecessary." The fallacy in the argument is the use of the term
> "unnecessary." The danger does not come from the weapons
> themselves. It comes from the use of those weapons, and as has
> already been discussed, that risk, in terms of an Eighth Amendment
> violation, is not unnecessary. The weapons may increase the risk of
> violence, but their existence is only one facet to be considered in the
> overall question of whether or not prison officials have acted in a
> willful and wanton manner in inflicting unnecessary pain. The fact
> that inmates have been able to make and possess some knives out of
> scrap metal may be impressive. It may even seem shocking. But, the
> stark reality of prison life is that virtually anything can be employed
> as a weapon, e.g., a pencil can become a dagger; an electric cord a
> garrote, a lock inside a sock a bludgeon; human excretion a poison.
> Pool cues, brooms, and chairs have all been used as weapons at one
> time or another. The pervasive risk of harm from which inmates are
> entitled to be protected is not the knife, but the act of assault. The
> courts have been unwilling to establish constitutional liability solely
> on the basis of the existence of weapons within an institution. See
> Bogard v. Cook, 586 F.2d 399, 418 (5th Cir.), cert. denied, 444 U.S.
> 883 [100 S.Ct. 173, 62 L.Ed.2d 113] (1979); cf. Puckett v. Cox, 456
> F.2d 233, 235 (6th Cir.1972) (negligence in permitting insane

prisoner to roam within prison, and in allowing him access to dangerous instruments does not state equal protection claim).

*Id.*   The Fourth Circuit continued:

> While a knife is not dangerous in and of itself, and only becomes dangerous when used to inflict injury, we are troubled by the statement that scrap metal is not sufficiently safeguarded and that the methods employed to restrict the making and conveyance of weapons are inadequate. This would indicate a pervasive risk of harm from use of the knives, and a possible inadequate official response would appear to make out a claim if prison officials ignore the problem, after they become aware of it, and fail to take action to prevent the manufacture and possession of weapons which can be used to harm other inmates. Although the evidence does not establish that there have been many injuries from these weapons, the condition should not be allowed to exist if it can be prevented by better inventory control and supervision of the machine shop or other places where scrap metals are produced and can fall into the hands of inmates.

*Id.*

Based on the Sanchez Complaint, plaintiff urges the Court that he was subject to a substantial risk of harm of which Sheriff Hebert was aware and that his continued sale of padlocks in the jail was in deliberate indifference to his safety. [plaintiff's Memorandum in Opposition, Rec. Doc. 41 at p. 9]. Based on the evidence submitted, and after considering the record as a whole, the Court finds that plaintiff has failed to carry his summary judgment burden. The sole evidence adduced by Francisco that he was injured with a padlock is his testimony that his friend Spencer told him that Caeser had one during the fight. However, assuming

17

that a padlock was used, while also considering plaintiff's arguments that the jail guards failed to adequately respond to fights in the cell areas, the Court finds that plaintiff's submissions are inadequate to raise a genuine issue of fact that Sheriff Hebert's policies were constitutionally inadequate.  In considering whether an Eighth Amendment violation has occurred, the cases cited by plaintiff look to "substantial" or "pervasive" risk of harm.  While recognizing that weapons exist in prison facilities, the *Shrader* court remanded the case for findings whether the scale of the manufacture of weapons represented a "pervasive" risk of harm and what the response had been. *See Shrader*, 761 F.2d at 982-3.[7]  As to the scale of the use of padlocks as weapons in the Iberia Parish Jail, other than the Sanchez complaint and his own testimony that another inmate had told him that a padlock was used during the fight, plaintiff has presented no other testimony or evidence regarding the prevalence of the use of tools or weapons by inmates at the Iberia Parish Jail.  As to Sheriff Hebert's response to the Sanchez complaint, plaintiff argues that Sheriff Hebert's continued sale of padlocks after the receipt of the complaint amounts to

---

[7]A "pervasive" risk of harm may not ordinarily be shown by pointing to a single or isolated incidents. *See e.g. Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir. 1992) (holding a "pervasive risk" is something more than a single incident and something less than a riot).

18

"deliberate indifference." As defendant argues, plaintiff's assertion that Sheriff

Hebert's continued sale of padlocks following the receipt of the Sanchez Complaint

amounts to deliberate indifference fails to consider that the padlock "weapon" at

issue is not simply a weapon but serves the primary and necessary function of

securing inmates' private property. Additionally, plaintiff's argument fails to

recognize that inmate possession of padlocks is controlled to the extent that Sheriff

Hebert has required that locks be obtained only through the jail commissary and

disallows all other locks as contraband. More specifically, the Jail Handbook

provides:

> A locker is provided for each inmate. All personal items and issued
> property must [sic] be stored in an inmate's assigned locker. Only
> locks sold in the commissary are allowed. All other locks will be
> considered contraband and removed. Any lock found with the keyhole
> jammed will be cut off and not replaced . . .

[Plaintiff's Memorandum in Opposition, Rec. Doc. 41 at Exhibit 1].

Plaintiff also directs the Court to *Flanders v. Maricopa County*, 54 P.3d 837

(Ariz. App. Div. 1 2002) where the court found that the evidence demonstrated that

defendants knew all inmates in a "Tent City" facility in Arizona were subjected to a

substantial risk of violence. Plaintiff relies on the following language from the

opinion which indicated the plaintiff in that case:

> . . . presented evidence that violence occurred with considerable and

19

needless frequency. He presented evidence that, among other things, the Sheriff and his deputies had actual knowledge that prisoners used rebar tent stakes and tent poles as weapons and did nothing to prevent it. The Sheriff admitted knowing about, and in fact intentionally designing, some conditions at Tent City that created a substantial risk of inmate violence: i.e., the lack of individual security and inmate control inherent in a tent facility; the small number of guards; a mixed inmate population subject to overcrowding, extreme heat, and lack of amenities. The history of violence, the abundance of weaponry, the lack of supervision, and the absence of necessary security measures supports the jury's finding of deliberate indifference to inmate safety.

*Flanders v. Maricopa County*, 54 P.3d at 846.  The Court finds *Flanders* to be distinguishable from the case at bar.  Where the *Flanders* court noted a history of violence, abundance of weapons, lack of supervision and absence of necessary security measures, the evidence submitted in this case consists of the *Sanchez* Complaint and the jail personnel's failure to respond to the fight earlier than they did. Based on the evidence submitted, and considering the record as a whole, while recognizing that "[d]eliberate indifference is an extremely high standard to meet," *Domino v. Texas Dept. of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001), the Court finds that plaintiff has failed to raise a genuine issue of fact that he faced an excessive risk of attack by or with a padlock to which Sheriff Hebert responded with deliberate indifference.

Correspondingly, plaintiff's assertion that the trier of fact could conclude that Sheriff Hebert failed to properly train or supervise his employees in

responding to fights based on the jail personnel's failure to respond earlier than they did lacks merit.  Plaintiff submits excerpts from his deposition testimony that at least two fights occurred in the same area of the jail before he was assaulted, asserting that this evidence appears to show that a series of fights took place over a period of at least 10 to 15 minutes prior to response and the statement of Dep. Comeaux to evidence that Dep. Comeaux "happened upon the fight as it was nearing its completion" [plaintiff's Memorandum, Rec. Doc. 41 at p. 9].  Plaintiff questions the "efficacy of the cameras in these areas and whether the guards even monitor them" [*Id.*].  Defendant responds that plaintiff has cited no authority for his implicit premise that the guards had a duty to constantly monitor a general population.[8]  Defendant argues that, even if the guards had a duty to continuously monitor the cameras, a failure to do this for a 10-15 minute period in the middle of the night amounts, at best, to negligence, not deliberate indifference.  Although there appears to be a dispute as to the time of the incident as Dep. Comeaux indicated the incident took place at approximately 11:30 p.m., while plaintiff stated in his deposition that the incident occurred during the day "before the lights went

---

[8]Defendant asserts that the attack apparently occurred in a dormitory that housed inmates from the general prison population, not inmates who were considered particularly dangerous to others, relying on Easton's deposition testimony.  See Easton Depo. 1 at pp. 22, 26, indicating that the room was large, housing about 26 inmates, and that Curtis Ceaser and Kenneth Dugas were moved to that area from "off of lock-down."

out," the Court finds that the plaintiff's submissions are insufficient to raise an

issue of fact either that jail personnel responded with deliberate indifference or that

Sheriff Hebert improperly trained jail personnel to respond to jailhouse fights.  It is

"*obduracy and wantonness, not inadvertence or error in good faith*," that

characterize deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct.

2321, 115 L.Ed.2d 271 (1991)(citing *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct.

1078, 89 L.Ed.2d 251 (1986)).  Thus, the legal conclusion of deliberate

indifference must rest on facts clearly evincing "wanton" actions on the part of

defendant. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985).  For example, in

*Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632

(1983), the Court approved the following definition of wanton:

> 'Wanton means reckless – without regard to the rights of others ...
> Wantonly means causelessly, without restraint, and in reckless
> disregard of the rights of others.  Additionally, wantonness is defined
> as a licentious act of one man towards the person of another, without
> regard to his rights; it has also been defined as the conscious failure by
> one charged with a duty to exercise due care and diligence to prevent
> an injury after the discovery of the peril, or under circumstances where
> he is charged with a knowledge of such peril, and being conscious of
> the inevitable or probable results of such failure.' 30 American and
> English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted).

As to plaintiff's assertion that "[t]here is no evidence in this case that anyone

responded to the fight . . . after observing it on the jail's surveillance cameras,"

22

[plaintiff's Memorandum, Rec. Doc. 41 at 9], the evidence submitted shows that Dep. Comeaux, upon being alerted of the attack, took immediate action, proceeded to separate the inmates, and placed them in separate cells.  There is no evidence to suggest that any officer observed the fight in progress and ignored it.  To the extent that plaintiff alleges that the jail guards were inadequately trained in that they failed to continuously monitor by camera surveillance a general population, the Court finds that any such evidence is insufficient to support a claim of deliberate indifference.

Moreover, no evidence suggests that the prison guards were aware of facts from which the inference could be drawn that a substantial risk of serious harm to plaintiff existed. *See Farmer*, 511 U.S. at 844 (prison officials may be free from liability if they were unaware of the facts giving rise to the danger). No evidence has been submitted to show that Sheriff Hebert was aware of any problems between Francisco and Ceaser until the initial assault occurred.   Plaintiff concedes that at no point in time after being approached and notified of the impending potential attack did he notify or attempt to notify the prison guards in an effort to inform them that there existed a "substantial risk of serious harm." [Rec. Doc. 41; Francisco Depo. at 24].

Plaintiff has failed to provide direct evidence that the jail staff deliberately

23

intended to cause harm; and deliberate indifference can be inferred only upon a showing of "subjective recklessness" in the criminal sense.[2] *Norton v. Dimizana*, 122 F.3d 286, 291 (5th Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. at 838-40)). Finally, even assuming that prison personnel were aware of such facts, nothing suggests that they actually drew such an inference.  It is well established law that, "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a *substantial risk* of serious harm." *Thompson*, 245 F.3d at 459 (*emphasis added*). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).   Accordingly, the Court finds that plaintiff has failed to raise a genuine issue of fact that Sheriff Hebert failed to properly train his guards to respond to inmate altercations.

### B. Sheriff Hebert's Qualified Immunity

---

[2]The Seventh Circuit has interpreted this "subjective recklessness" standard to require evidence of "extreme or complete indifference to the value of human life." *Goka v. Bobbitt*, 862 F.2d 646, 650 (7th Cir. 1988).

It is clear from the facts of this case, viewed in the light most favorable to Francisco, that Sheriff Hebert's actions did not give rise to any issue of constitutional magnitude.  As such the Court further finds that Sheriff Hebert is entitled to qualified immunity from suit.  *See Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir. 1995) (holding government officials are entitled to qualified immunity from suit when performing discretionary functions unless their conduct violated statutory or constitutional rights, clearly established at the time of the alleged incident, of which a reasonable person would have known).

## C. State Law Claims

Defendant requests that the Court dismiss plaintiff's state law claims against it with prejudice, arguing that they are weak and easy to decide relative to the litigation effort that has been invested and that may be needed in the future in state court. [defendant's Memorandum in Opposition, Rec. Doc. 39, p. 15].  Specifically, defendant emphasizes that plaintiff's state law claims are barred and must be dismissed with prejudice as he failed to pursue his administrative remedies in accordance with the Corrections Administrative Remedy Procedure, LA. REV. STAT. ANN. §15:1171, and that plaintiff has failed to demonstrate that Sheriff Hebert was negligent.  Plaintiff, on the other hand, argues that the administrative remedy in place which requires that claims be filed within "20 calendar days

25

following the date on which the basis for the request occurred" is contrary to the statute which provides that a victim of a tort shall have 90 days to initiate administrative remedies. *See* LA. REV. STAT. ANN. §15:1172(B)(1). Although 28 U.S.C. § 1367 confers supplemental jurisdiction over plaintiffs' state law claims, the assertion of supplemental jurisdiction may be declined if all claims over which the Court has original jurisdiction are dismissed. 28 U.S.C. § 1367(3). "When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. However, the dismissal of the pendent claims should expressly be without prejudice so that the plaintiff may re-file his claims in the appropriate state court." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). "The Supreme Court in *United Mine Workers of America v. Gibbs*, emphasized that '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law.'" *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993)(citation omitted).

Because the entirety of plaintiff's federal claims will be dismissed by this ruling, the Court will not have original jurisdiction over their remaining state law claims. Accordingly, the Court will dismiss plaintiffs' state law claims without prejudice.

26

## IV.  Conclusion

For the foregoing reasons, the Court will grant defendant's  motion for summary judgment and dismiss the entirety of plaintiff's federal law claims with prejudice.  Additionally, the Court will not exert supplemental jurisdiction over the remaining state law claims, which will be dismissed without prejudice.